Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3962 | **DATE** | 9/27/2001 |
| **CASE TITLE** | SANDRA HOWELL vs. OCWEN FEDERAL BANK, FSB | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion to dismiss Count I and II of plaintiff's complaint is granted [7-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 30 |
| | Mail AO 450 form. | | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 27 PM 5: 42 | | |
| LG courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

SANDRA HOWELL,

    Plaintiff,

v.

OCWEN FEDERAL BANK, FSB,

    Defendant.

No. 00 C 3962

Judge John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Howell (Howell), brought this class action against defendant, Ocwen Federal Bank (Ocwen), for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (FDCPA), the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)-(f), and for breach of contract. Presently before the Court is defendant's motion dismiss plaintiff's FDCPA claims found in Counts I and II of Howell's complaint.

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of his claims that would entitle her to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In 1995, Howell filed for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code. One of Howell's debts at that time was the mortgage loan on her residence. The loan was originally obtained from Alliance Mortgage in August 1994. In either August or October of



1997, Ocwen acquired the loan or servicing of the loan from the Secretary of Housing and Urban Development. On September 1, 1999, Howell successfully completed her chapter plan and was discharged.

Subsequently, Ocwen sent plaintiff notices purporting to advise her that she was in default and that her loan was being accelerated. The notices were dated November 15, 1999; January 10, 2000; March 14, 2000; and May 15, 2000. The purported delinquency consists, in part, to late charges and legal fees that Ocwen or its predecessor did not include in the arrearage claim filed in the Chapter 13 bankruptcy. Plaintiff alleges that Ocwen has a computerized mortgage servicing system and servicing policies and practices that do not bring a loan current upon the successful completion of a Chapter 13 bankruptcy.

The purported delinquency also includes approximately $3,000 in escrow advances, representing tax and insurance payments, that Ocwen made but could not fund from plaintiff's escrow account.

Count I of Howell's complaint specifically alleges that Ocwen violated the FDCPA "by failing to bring plaintiff's loan current upon the successful conclusion of her Chapter 13 plan and thereafter sending plaintiff multiple Notices of Acceleration, monthly statements and correspondence claiming past due sums which plaintiff does not legally owe."

Count II of Howell's complaint alleges that Ocwen violated the FDCPA "by failing to adjust plaintiff's escrow account during the pendency of her Chapter 13 bankruptcy and then asserting a massive escrow shortage upon her successful completion of the plan."

Ocwen argues that Howell's FDCPA claims should be dismissed because they turn soley on whether Ocwen conducted itself properly during plaintiff's bankruptcy proceedings; therefore,
2

plaintiff's action cannot be litigated as a FDCPA claim but must be brought in the bankruptcy court. Howell argues that her complaint alleges that Ocwen's post-discharge collection attempts violated the FDCPA; therefore, she may maintain an FDCPA action because she could not have known about the unlawful collection attempts until after the bankruptcy proceedings had closed.

Plaintiff's complaint raises the issue of whether a debtor can maintain FDCPA claims premised on alleged failure to bring a loan current upon the successful completion of a bankruptcy plan and alleged failure to adjust the escrow account during the pendency of the bankruptcy proceedings. The interplay between the Bankruptcy Code and the FDCPA has been addressed in cases with similar, although not identical, facts.

In *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark*, 1999 WL 284788 (N.D.Ill. April 26, 1999) (*Baldwin*), the debtor filed an FDCPA claim, alleging that the defendant inflated a proof of claim in the then-closed bankruptcy proceeding. The debtor did not contest the proof of claim during the bankruptcy proceeding. In ruling on the defendant's motion to dismiss, the *Baldwin* court analyzed the language and purposes of the FDCPA and the Bankruptcy Code. The court found that the FDCPA, like the Consumer Credit Protection Act, was designed to protect debtors from having to file bankruptcy and therefore applied before a debtor filed for bankruptcy protection. However, the FDCPA did not apply to claims arising out of the bankruptcy itself; once the debtor was in bankruptcy court, the debtor's remedies were limited to those provided in the Bankruptcy Code. The court found that the application of the FDCPA to bankruptcy proofs of claim would undermine the central purpose of the Bankruptcy Code – "to adjudicate and conciliate all competing claims to a debtor's property in one forum and one proceeding." Therefore, an FDCPA claim could not premised on proofs of claim filed

during the bankruptcy proceeding. *Baldwin*, 1999 WL 284788 at * 5-6.

Citing to *Baldwin*, Judge Kennelly also found that the plaintiff in *Gray-Mapp v. Sherman*, 100 F.Supp.2d 810 (N.D.Ill 1999), who alleged an improper claim of proof in a bankruptcy proceeding and who did not contest such proof of claim during the bankruptcy proceeding, could not maintain an FDCPA action. Instead, the plaintiff must present the claim in bankruptcy court.

In another FDCPA claim that was filed after the bankruptcy proceeding was closed, in which the plaintiff did not object to a proof of claim during the bankruptcy and then filed a FDCPA claim alleging that the proof of claim was incorrect, the Seventh Circuit found that the plaintiff was barred through the doctrine of issue preclusion from contesting a proof of claim that was decided in the bankruptcy court. *Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir. 2000) (*Adair*). The *Adair* court found that "issue preclusion applies because the FDCPA is an improper vehicle for challenging the amount of a debt established by the bankruptcy court. The FDCPA regulates the practices used to collect a debt." *Adair*, 230 F.3d at 895. The *Adair* plaintiff could not succeed in his FDCPA claim without showing that the existence or amount of his debt was established improperly; therefore, his FDCPA claim was dismissed. *Adair*, 230 F.3d at 896. However, the *Adair* court specifically stated that, because the issue had not been raised, it "express[ed] no opinion as to whether a FDCPA claim can ever be predicated on a previous filing in a bankruptcy proceeding." *Adair*, 230 F.3d at 896 n. 10.

In *Wagner v. Ocwen Federal Bank*, 2000 WL 1382222 (N.D.Ill. Aug. 28, 2000) (*Wagner*), the plaintiff alleged that the defendant violated the FDCPA when it attempted to collect a discharged debt following plaintiff's Chapter 7 bankruptcy. Judge Kennelly found *Baldwin* and *Gray-Mapp* were distinguishable because Wagner's FDCPA claim did not pose a

4

danger of contravening the Bankruptcy Code's central purpose of adjudicating and conciliating all competing claims of a debtor's property in one forum and one proceeding. Unlike the plaintiff in *Gray-Mapp*, the *Wagner* plaintiff was not attempting to bypass any remedies under the Bankruptcy Code because she could not have raised the issues in that proceeding because all of the defendant's activities occurred after the conclusion of her bankruptcy and the defendant had not become a creditor of Wagner until after the bankruptcy case was closed. Therefore, the plaintiff could not have brought the defendant into the bankruptcy proceeding based on a claim arising subsequent thereto. Accordingly, the court did not dismiss plaintiff's FDCPA claim. *Wagner*, 2000 WL 1382222 at * 2.

In *Peeples v. Blatt*, 2001 WL 921731 (N.D.Ill. Aug. 15, 2001) (*Peeples*), the plaintiffs purchased merchandise from Sears and filed for Chapter 7 bankruptcy before paying for such merchandise. Subsequently, their debts were discharged. After the bankruptcy proceedings were closed, Sears, through the defendant law firm, made demands for the return of the merchandise but also offered to allow plaintiffs to redeem the merchandise for a lump sum payment. The plaintiff's alleged that the defendant's replevin activities were attempts to collect discharged debts in violation of the FDCPA. *Peeples*, 2001 WL 921731 at * 1. The *Peeples* court found *Wagner* persuasive and distinguished *Baldwin* and *Gray-Mapp*. The court found, that like *Wagner*, the alleged activities of the defendant that constituted a violation of the FDCPA occurred after the bankruptcy case was closed; therefore, the FDCPA claim could stand. *Peeples*, 2001 WL 921731 at * 4.

The issue here is drawn by the conflicting theories of the parties. Not surprisingly, Ocwen argues that Howell's claims are based on activities that occurred during the bankruptcy;

5

therefore, *Baldwin*, *Gray-Mapp*, and *Adair* are controlling. Howell argues that her claims are based on activities that occurred after the bankruptcy proceeding was closed; therefore, *Wagner* controls.

A review of the complaint indicates that Howell alleges misconduct by Ocwen both during and after the bankruptcy proceeding. Howell alleges that Ocwen has a computerized mortgage servicing system and servicing policies and practices that do not bring a loan current upon the successful completion of a Chapter 13 bankruptcy. Count I alleges that the failure to bring Howell's loan current caused Ocwen to send Howell statements claiming sums that are not legally due. Count II of Howell's complaint alleges that Ocwen failed to adjust Howell's escrow account during her Chapter 13 bankruptcy and then assessed a massive escrow shortage after completion of the plan. It is not clear whether plaintiff knew, could of known, or should have known that her loan was not brought current or that the escrow was not determined properly during the bankruptcy proceeding. However, resolution of this issue is not determinative because in order for Howell to prove either count, she must show that Ocwen did not bring her loan current at the completion of the bankruptcy and/or that Ocwen failed to adjust her escrow during the bankruptcy. These proofs would require Howell to submit evidence concerning these issues that took place during the bankruptcy proceeding and that have already been decided by the bankruptcy court. Therefore, maintenance of the FDCPA in this Court would undermine the central purpose of the Bankruptcy Code because the adjudication and conciliation of the claim would not be taking place in one forum and one proceeding. *See Baldwin*, 1999 WL 284788 at *5; *Gray-Mapp*, 100 F.Supp.2d at 814; *see also Walls v. Wells Fargo Bank*, 255 B.R. 38, 45 (E.D. Cal. 2000) (dismissing FDCPA claims premised on violations of the automatic stay and

6

discharge injunction of the Bankruptcy Code); *Kibler v. WFS Financial, Inc.*, 2000 WL 1470655 (C.D. Cal. Sept. 13, 2000) ) (dismissing FDCPA claim based on alleged attempt to collect a discharged debt). Furthermore, the determination of the correct amount of debt, including escrow debt, is not a proper FDCPA claim. *See Adair*, 230 F.3d at 896.

Instead, Howell can reopen her bankruptcy proceeding pursuant to 11 U.S.C. § 350(b) and Federal Rules of Bankruptcy 5010. Reopening the bankruptcy proceeding would enable the bankruptcy court to determine the disputed amounts allegedly due to Ocwen and any misconduct by Ocwen during the bankruptcy proceeding. In addition, Howell may seek an injunction and sanctions against Ocwen pursuant to 11 U.S.C. § 524.

While a FDCPA claim could result in a more lucrative remedy in Howell's favor, "[n]othing in the Bankruptcy Code or the FDCPA suggests that a debtor should be permitted to bypass the procedural safeguards in the Code in favor of asserting potentially more lucrative claims under the FDCPA." *Gray-Mapp*, 100 F.Supp.2d at 814.

Howell's claims do include allegations of wrongful collection practices after the close of bankruptcy, as in *Wagner* and *Peeples*. However, unlike Howell, the plaintiffs in *Wagner* and *Peeples* did not have to establish that a fact that was decided in the bankruptcy court was incorrect or that the defendants in those cases acted inappropriately during the bankruptcy. The *Wagner* defendant was not part of the bankruptcy proceeding and had no connection to that proceeding. The alleged actions of the defendant in *Peeples* were not based on any actions or claim determinations made in the bankruptcy proceeding. These distinctions are controlling because in *Wagner* and *Peeples*, the District Court did not need to address what occurred during the bankruptcy proceeding, the appropriateness of any conduct by the parties in the bankruptcy

7

proceeding, or the appropriateness of any findings made by the bankruptcy court. Here, it would be necessary to make such determinations for Howell to prove her FDCPA claims. As stated above, such findings should be dealt with by the bankruptcy court using the remedies allowed by the Bankruptcy Code. *See Baldwin*, 1999 WL 284788 at * 5; *Adair*, 230 F.3d at 896.

For the foregoing reasons, defendant's Motion to Dismiss Count I and II of Plaintiff's Complaint is granted.

Dated: September 27, 2001

JOHN W. DARRAH
United States District Judge